The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. May it please the Court, I represent Edmund Jenkins in this matter. This raises an issue of statutory construction. The problem we have is that Virginia has defined malicious wounding and unlawful wounding in one way, and Congress has defined a crime of violence in a way that Virginia statute does not meet it. I won't deny that it creates some unusual results when applying Congress's definition of crime of violence to determine whether or not malicious wounding or unlawful wounding are indeed crimes of violence. But statutory language is what we have to go with, not what makes sense because due process requires that we rely on what is stated in the law. The law states that a crime of violence is one that has as an element the actual attempted or threatened use of force, as an element. There is no such element in Virginia statute. The existence of such an element cannot be presumed. Elements are those things that have to be proved beyond a reasonable doubt to a jury before they can convict. A jury is not asked to decide whether or not someone who put poison in a drink used force. They're only asked to decide whether caused bodily injury by any means. To say that it, to read into that statute an implicit element of force would be to take those words right out of the statute by any means would become meaningless. You mentioned poisoning. I mean, is that the crux of your argument that causing bodily injury by any means could involve, you know, indirect applications of force like putting poison in a drink? Yes, and in fact, as cases that have been interpreted under Virginia's law, a simple assault and battery, that could be one that involves just an offensive touching, not a violent use of force. If it is intended to cause injury and in fact does cause injury, then that would be punishable as an unlawful wounding. Okay, so I see those as two slightly different arguments. One, the poisoning example sort of sounds in this distinction between direct and indirect uses of force. And then what you said there sounds like you're talking about kind of de minimis uses of force. And you're making both arguments? I'm making both arguments, yes. A de minimis use of force is not sufficient force under Johnson 1 that requires violent physical force. But if the, can you explain to me why the specific intent element doesn't, at least as a practical matter, take care of that problem? Someone has to actually intend to maim or wound or injure the person. How is that not going to involve at least the attempted or threatened use of force that would be capable of doing that? Well, for example, suppose you fray the wires on someone's steering column or brake line. You don't even break them all the way. You just fray them to the point that nature may take its course. And at some point when the person is driving, their steering or brakes go out. And you intended that to happen, but you didn't apply physical force to a person. Okay. That, again, sounds to me more like the difference between indirect and direct applications of force. That is more like indirect. Okay. Suppose I know that this person is emotional and reactive and that she can be scared easily. And so I wait until she's coming up the stairs, and then I say something like, stop, and she falls backwards. I never touched her. Again, if she fell down the stairs, it doesn't really seem like we're talking about a de minimis touching, right? You're talking about you didn't apply force directly to her. Suppose I did a de minimis. That's fine. I'm happy to have examples on direct, indirect, too. I'm just trying to get my hands around. Suppose I actually touched her on the shoulder and then said, oh, my gosh, and jumped myself, but didn't push her, didn't hit her. But she jumped and falls back down the stairs because of my touch. Okay. Can I ask you why our cases, sort of our line of cases in Irby and Reed, sort of call them the poison cases, don't pretty much address that by saying, look, if you hurt someone through the indirect use of force, you know, you didn't pick up the staircase and push it on her, but you pushed her down the stairs. Why those cases don't control here? Your Honor, I think they rely on a misreading of Castleman. I totally understand that argument, and I got that from your brief. But aren't we bound by them? I mean, is this just an argument you're preserving for further review? To the extent that direct or indirect force, we may be precluded from arguing, yes, I am preserving that for further review. But for the de minimis force, I am not. The de minimis force that can cause injury, whether it be because of an eggshell plaintiff or other reason, if it's done with the requisite intent under Banovich, 196 Virginia 210, 83 Southeast 2nd, 369, applying a cream, a salve that was supposed to be a medication but instead actually caused the woman's skin to corrode off, if they'd been able to prove the specific intent, that would have supported an unlawful wounding conviction. But her skin, how is that not a use of force? I mean, her skin came off. It's de minimis. Really? Her skin came off? I put on a cream. Okay. It's a cream. It's not force. It's not pulling a trigger on something else that imposes a huge force. And then also in Commonwealth v. Brown, the court held that any assault and battery is a lesser included offense of unlawful or malicious wounding. And as we know, assault and battery is de minimis. De minimis offensive touching can constitute a battery. And if that is done with the intent to cause serious injury or maiming or disfigurement, whether it does in fact or not cause it, if it's done with that intent and causes some injury, even a bruise now, as these cases are interpreted in Virginia, a 2015 case involving spousal domestic violence where the girlfriend had bruises, no broken skin, no broken bones, but even bruising was sufficient. If that is enough to support an unlawful wounding conviction, it is not enough to be the violent physical force that is required under Johnson. That was my original question. Just as a practical matter, can you just describe to me the circumstances under which someone does sort of a mere offensive touching with the intent to wound or maim? How does that happen? Why would someone do this if they intend to wound or maim? Well, it just seems practically speaking that's going to be a null set. Practically speaking, people do funny things in anger and mean funny things when they do them. Grabbing somebody in the heat of an argument may legally be insufficient to be physically violent force, but it could leave a mark. And at the time they grabbed them, they could have intended to cause them harm and then stopped short of doing so, but they had already made that assault contact. And then there's, I'm going to kill you, and then they pause, breathe, and they stop. But to convict under the statute, wouldn't the part where they grabbed, the grabbing itself have to have been with the intent to maim or wound? You're saying that you can be convicted under the statute if you do something with an intent to later do something that would intend or wound, but then don't complete the later act. I would say not just in a domestic violence context, but when you grab someone in the heat of anger and say, I'm going to kill you, you're not talking about a future act. You're talking about right now, and that is your intent at the moment you grab them. You may reconsider that intent later, but it's still enough to support in Virginia the way the Virginia Supreme Court has interpreted unlawful and malicious wounding. That's enough to support a conviction. Which of our cases are you talking about that you say are in conflict with Castle? I would say that in particular, Reed, Irby, and Covington. Reed, Irby, and Covington. Covington's one just came out? On the 18th, yes, sir. They're inconsistent with the Supreme Court precedent? I believe so because Castleman clearly stated that it was not addressing whether direct force was required or indirect force would be required for the ACCA purposes. It explicitly said we are not holding that. It was not an ACA? It was not an ACCA case. Misdemeanor? Misdemeanor domestic violence. Wow. Do you think that's a material distinction? Yes, I do. For all the reasons stated in the Castleman opinion, both Johnson and Castleman noted that domestic violence misdemeanors and ACCA violent felonies are two different animals. In Johnson, the court was clear to say they were not deciding what force would be You're saying the government is not entitled to rely on Reed, Irby, or Covington? I would say that they are wrongly decided, and that makes them subject to being overruled on further proceedings. Not saying that they couldn't say that. Are you saying that they're wrong because they're inconsistent with the Supreme Court decision? Yes, I am. Then they can't be relied on. They are inconsistent with Johnson. Even though they're our cases, if you're correct, we have to stick with the Supreme Court or with our earlier cases. I would think so, and I would note in the McNeil case, and I believe that was your Honor's opinion, in the footnote you noted that the idea that Castleman deluded Johnson A footnote in a case might not necessarily be a holding, would it? It's not a holding, but it is noteworthy that it recognizes that Johnson and Castleman were interpreting two different statutes, and in both cases they indicated that their decision did not apply to the other variety. And so Johnson is still the one that holds when interpreting what a violent felony is. Apricio Soraya, you brought that to what you said? Which, Your Honor? Apricio Soraya, was that the case? Did you mention that one? That one doesn't ring a bell. Okay, it doesn't ring a bell. All right. But clearly, Johnson requires violent physical force if you're applying to ACCA. And the ACCA says that physical force has to be an element. Not that it's something that most of us would say probably had to happen if the crime was committed, but was it an element of the crime? Basically, the government is asking the court to rewrite the statutes to be compatible with one another, but that is not the court's obligation or duty. The court is to interpret the laws as they are written when the meaning is clear on its face, and use of force is clearly not an element of unlawful wounding or malicious wounding. You're saying the government wants us to rewrite the statutes. You mean the Virginia statute? The Virginia statute, yes, to comply with the Federal definition. Not the Federal statute. You don't think they want us to rewrite the Federal statute. Well, they're trying to get us to. So it matches the way the Federal statute has been interpreted. But either Congress or Virginia could make legislative changes that would resolve this problem. Congress could define a violent felony as one in which intentional bodily injury was caused, and that would eliminate this problem. Is there a divisibility question in this case? I believe not. Clearly there are two different crimes in the statute, but for purposes of divisibility in the modified categorical approach analysis, you only look at divisibility if there is one statute in which there is a violent felony. And in this case, neither statute can be interpreted to be a violent felony in every case. Thank you. Ms. Hudson? Good morning. Good morning. Jean Hudson for the United States. This case is controlled by the Court's decision last week, as Your Honor just mentioned a moment ago, in Covington, which interpreted a West Virginia statute with language identical to that of Virginia's Statute 18.2-51, which is the Court is aware makes it a crime to shoot, stab, cut, or wound, or by any means cause bodily injury with the intent to maim, disfigure, disable, or kill. In that case, the Court held that the statutory language dictated the result that, or excuse me, the conclusion that the minimum conduct required for a conviction of unlawful wounding must at least involve physical force capable of causing injury to another person. That meets the definition of Johnson, and for the same reasons that the Court found that the West Virginia statute constituted a violent felony, the Court in this case should find the same regarding Virginia's statute. My colleague's arguments regarding poisoning, I think, as Your Honor has pointed out, in the government's view were very clearly dealt with by the Castleman decision and by this Court's precedents that followed Castleman, specifically in Irby and Reed, and again in Covington. She says, or at least some of those you mentioned, are wrong. Ms. Spence just said that some of those cases are wrong, that they're inconsistent with the Supreme Court. They're very consistent with the Supreme Court, Your Honor. They took the Castleman decision, which clearly held that indirect force was not excluded by the Johnson definition of force and applied that reasoning to the context of the West Virginia statute and in Reed, the other Virginia statute, 18.2-55. So we think those cases are very clearly consistent with and properly applied Castleman's logic. Didn't Castleman say that it was, you know, construing a different statute and it was not actually deciding the question whether the same analysis would apply under this Federal statute? I'm sorry, I'm having trouble hearing. I'm sorry, I thought Castleman said clearly that its analysis of sort of common law force was limited to the statute in front of us, in front of it, and it was not deciding whether the same analysis would apply in this context. Castleman did leave that question open, but I don't, as some, I think the Third Circuit in Chapman made the conclusion that I would ask the Court to reach here, which is there's nonetheless no reason not to apply Castleman's logic to this context. It makes sense and would be appropriately applied here where you have a statute that cannot be committed without a bodily injury at a minimum and specifically, as Your Honor pointed out a moment ago, with the intent to maim, disfigure, disable, or kill. So we think Castleman's logic absolutely dictates the same result as it did in the West Virginia case. We know from Bessel's that the same language may not mean the same thing depending on the context, don't we? Well, the Castleman holding was simply regarding the concept of indirect force. So our view would be that the reasoning, which led the Castleman court to conclude that indirect force is not excluded by the Johnson definition of force, would absolutely be imported to the Virginia statute. The fact that the statutory language is the same is just another reason in the government's view. That doesn't address the question of whether or not it's minimal. Virginia allows the offense to be completed on a conviction with minimal force. It's the government's view. That's a different question, indirect versus, I think that's what Judge Harris was teasing out with your learned colleague there. It's the government's view that the- Do you agree that Castleman did not decide that question? Castleman did- As to what minimal, what is minimal force required, not indirect force? Because indirect force could be very violent. The question is, is it attenuated? Castleman said no, and in that context, they were looking at it wasn't. But counsel's argument is that under Virginia law, these crimes are completed by a minimum amount of force, little or many. So I'd like to say two things, I think, in response to the court's question. One is that we agree that Castleman left open the question whether the causation of bodily injury necessarily entails violent force. And our view there is that, as this court in Reed concluded, that the court's formal reservation in Castleman does not foreclose the application of Castleman's reasoning to this case. Regarding the- Can I stop you on Reed? Reed was a, there was a specific intent element in Reed, right? Isn't that what the language- Knowingly inflicting bodily injury, right? Yeah. Because what I am mixed up about is whether you are making a broad argument that after Castleman, whenever bodily injury is an element, it necessarily falls under the force clause, or whether you are making a narrower argument, that so long as you have this intent to mean or cause serious bodily harm, then you have taken care of your minimal force problem. Well, we're making both arguments. But our argument is, our primary baseline argument, I would say, is that when Johnson defined force as force capable of causing pain or injury, if a statute requires the actual proof of an actual bodily injury, then, as Justice Scalia said in his concurring opinion in Castleman, there must have been force capable of producing that result. So we are making that argument. That's why he had to concur, right? He concurred because the majority wouldn't say that. So I don't know how much weight we can put on a concurring statement. I would say, and I would point out, that the majority certainly didn't quibble with Justice Scalia's reasoning. They said we're not making it. They said, specifically, we are not endorsing that. They left the question open. But like I said, as this Court has said in Reed, there's still no reason not to. How many justices are in the majority of Justice Sotomayor's opinion? I'm sorry, I should know that, Your Honor, but I don't remember. How many justices join? The number. I'm sorry, I don't remember the number. Zero. But this Court has said. I think we have to take Castleman looking at Justice Sotomayor's opinion. That's the opinion of the Court. Would you agree with that? That is the opinion of the Court. But you were arguing, Judge Harrison, you wanted to rely on the concurring opinion. Well, I'm arguing that the concurring opinion makes sense, is logical, and that there's no reason not to import the reasoning there from Castleman. By votes, it would be the law we'd have to follow. Correct. But, again, as a concurring opinion, we wouldn't necessarily have to follow that. We might agree with it. That's right. We might say it makes sense, too. That's right. But it's not bound, it doesn't bind us. That's right. It doesn't bind us. That's right, Your Honor, and that's why I point particularly to this Court's decision in Reed where, acknowledging that, the Court simply said that the Court certainly not foreclosed from applying the reasoning there simply because the question was reserved in Castleman. So, I mean, it's even a little trickier, right, because we have had cases saying the opposite. And so, for us, the question is not just are we persuaded by the logic in Castleman. If we were coming to the question cold, is there something about Castleman that requires us to go back and say our prior precedent has been superseded? And it's hard to see how an opinion that specifically leaves open a question supersedes prior precedent. Right? We're not even coming to a cold. We've got that whole line of cases, Torres-Miguel line of cases, and the footnote in McNeil, and we have cases coming out the other way. So, for us, the question is is there something about Castleman that actually requires us to reverse those cases? I would say that the decision in Castleman regarding indirect force, that if the Court applied Castleman properly in this case, just like in Reed and Irby and Covington, the Court could not find that indirect force is excluded from the Johnson definition of force without running afoul of Castleman. That's the government's view. What if Reed, she says Reed's inconsistent with Castleman. If we agree with that, does Reed still control because it's a four-circuit opinion? Let's see. I'm trying to make sure I understand the question. If Reed is inconsistent with Castleman. She says it's inconsistent with Castleman. And I disagree with that. All right. If we agree with you that it's consistent with Castleman, or it's neutral, what about disregard Castleman? Is Reed binding on us as a four-circuit opinion? It interprets a different statute, so I think the Court would have to say that the Court. What if Reed is inconsistent with prior four-circuit cases, published opinions of our Court earlier, which would be controlling, the prior cases or Reed? Well, unless Reed, and, of course, one panel can't overrule another panel, so. You'd have to go back before Reed. You would have to go back. And if Reed was inconsistent with prior in-bank four-circuit cases, you would agree that the in-bank cases would have controlled? I think I would, but I would still come back to the point that. So, are you familiar with Aparicio-Soraya, for example? No, Your Honor. I'm sorry. I don't have that case in front of me.  with Aparicio-Soraya, the Aparicio-Soraya would control unless Castleman or something else in the Supreme Court had changed it, or unless we had changed it. Would you agree with that? I'm just talking about the point that you made that the prior, one panel can't overrule another, and a panel can't overrule what the in-bank court did. So, if we get cases going different directions, we have to go back into the history and figure out what the earlier opinions were, if they're independent of being overruled by something that came out of the Supreme Court in Washington. And I'm using now, and it flows from that, that the concurring opinion in Castleman could not overrule our precedent. Would you agree with that point? That the concurring opinion in Castleman can't overrule this Court's prior precedent? Yes. Yes, sir. But, again, our position is that the reasoning in Castleman can be applied in this case. But it couldn't be applied to overrule our precedent by a subsequent panel. Correct. And you wouldn't have to. Yeah, I might agree 100 percent with the concurring opinion in Castleman, but if I had another or two other judges who would agree to go along with me, I couldn't overrule a prior opinion of ours because this is just a panel. And we go back to the history. What's the earlier panel? What did we do? Because we're supposed to adhere to, we're supposed to deliver some predictability to the parties out here. Right. But even setting aside. I'm jumping around all the time. Yes, Your Honor, but even setting aside Justice Scalia's concurring opinion, just looking at the Castleman opinion itself, the majority opinion. Just looking at it. We'd have to look at that. It would be controlling. Absolutely. You and I will agree on that. What Judge Sotomayor wrote would control what we're doing. And if it's inconsistent with or we have prior precedents inconsistent with what she did or what the Court did, then the majority of the Court in Castleman controls. Absolutely. We'll agree with that 100 percent. I agree with it, and I'm sure everybody else would. Right. And I think I've made this point, but our view is that there is no reason not to apply that reasoning to this case. Which reasoning? The reasoning from the majority opinion in Castleman regarding indirect force. Well, it would be every reason to apply the holding of Castleman majority to what we do, because it's the view of the Supreme Court of the United States. Right. We have every reason to apply it. We're bound by it. And our view is that applying that, just like this Court did in Covington, the Court should reach the decision that the government advocates in this position. You say Covington is good law because it's entirely consistent with Castleman. Entirely consistent. And you would say the same thing about Reed and Irby, too. Exactly. You would take a contrary view to that of Ms. Spence. Exactly. Your argument is because West Virginia's statute is similar to Virginia's, that's dispositive in terms of applying those cases here? It is certainly a factor. The fact that the statutory is not just similar as I read it. The statutory language is identical to the Virginia statute. But what's the other side of it? You say that's an element. What's the other part? These arguments that we've just been talking about. No, no, no. That under the Johnson definition of force, if force requires simply force capable of causing pain or injury, under that statute the Virginia case is interpreting that statute as well as the statutory text indicate that a violation of Virginia statute 18.2-51 necessarily involves Johnson-level force. And what do you glean there from the Virginia law? In the cases that we have reviewed, Your Honor, and really responsive to my colleague's arguments regarding certain of the cases that she points out, our view would be that the cases that we have seen either involve direct force or indirect force and that, again, under the logic in Castleman, the cases that involve indirect force still involve Johnson-level force because of the requirements of the statute, which require proof of a bodily injury and especially where there is the intent to maim, disfigure, disable, or kill. I haven't seen a case myself that I thought fell outside one of those categories, including the cases that have been mentioned by my colleague. The concept of de minimis force is nowhere in the Supreme Court cases. Talking about the force that we are analyzing here, the government's view is that there are only two types of force for these purposes and it's either offensive touching or it's violent force. And, again, our view is that for all violations of 18.2-51, it's violent force. But even if there were some de minimis force, our position would be that because a bodily injury has to be proven and with the intent to maim, disfigure, disable, or kill any violation, even under that standard, which we don't think exists, would qualify as a Johnson-level force and, therefore, a violent felony. Because of the intent requirement. Because of the intent requirement. So can the force be the actual injury itself? That's enough? Just the injury itself? Can the force be the injury? Just the injury. Just the injury. I don't think the force is the injury. Just be something other than the injury? My question, for example, hypothetical, let's say you know a person is in the bed and they normally keep their medicine in a certain place. So you go in while they're asleep and you know they get up at night and get there and you turn the light off and you move the medicine to the other side of the bed. And they get up and, sure enough, they fall and break their neck. That's intent, right? But what they did was they turned off the light and moved medicine. Is that enough? Is that force? Our argument would be that it is, Your Honor. What's the force? Pardon me? What is the force? The force would be arguably. No, not arguably. I'm asking you. You don't have to argue. I'm asking you. Just tell me your position. What is the force in my hypothetical? The force that was exerted that caused the person to. Which was what? It could. Let me make it easier for you. Was it turning off the light or was it moving the medicine 15 feet? Both. That was the force? It's something exerted by a physical energy, exerted by a physical body. I think the Third Circuit in the Jennings case addressed. Where would you get the intent to maim, disfigure, disable, or kill? Well, I'm assuming that there would be in the judge's hypothetical, Your Honor, that there was some intent to kill in that hypothetical. If there weren't, you wouldn't be under this statute in the first place. So without that intent. Turn off the light with intent to maim. Remove the medicine with intent to maim. Right. There would have to be some intent to maim, disable, disfigure, or kill. You'd have to verify this statute. You've still got to have the intent. Right. And that's my point. Even under Your Honor's hypothetical, you would have to have some proof of that in order to get past the statute. You're doing a great job, both of you, ably arguing the case. But the problem is, and I guess this is maybe Judge Gregory's two cents, is that we get here because we're trying to shoehorn something that was never intended to match. The federal statute is meant to enhance crimes, already pretty much draconian sentences. You add on to them if you can find these predicate offenses. But they're matching it under, again, federalism. States have no interest in narrowing their crimes. They want it as broad as possible. So then, rather than using the rule of lenity, you try to find a way to make this fit into a, well, let's see. Well, okay, you come off the light and you move the medicine. That's force. It's indirect. It's minimal. Is it really the violent force that the federal statute is talking about, or is it really just trying to shoehorn and make it work? Modified approach, that's a question of lenity to me. If it doesn't work categorically, why are you going to try to modify it to find a way to make it work? I mean, that's just the theory of criminal law. It seems to be a little off, but go ahead. But that's my two cents to that. But I think that's the problem in these cases. I understand the Court's comments, and I would make the point, though, that as I think it was this Court in Irby that said, nonetheless, it's very difficult to imagine, though, conduct which is capable of causing a person to die, especially, I'm adding, especially when coupled with the intent required in the Virginia statute that doesn't constitute violent force. And it would be the government's view, even in light of the Court's comments, that Virginia malicious wounding and unlawful wounding is the archetypal crime that would fit what Congress intended when it was talking about designating crimes for violent purposes, violent felony purposes for the ACCA. So I understand the Court's comments, but the government's view is this absolutely fits within that construct and definitely under the Johnson definition of force. I see that my light is on. Can I ask one very quick question? Sure. Do we have a divisibility problem in this case or a question? It sounds like you think not, because however you carve up the statute, it all comes in under the force clause, so there's nothing for us to do on divisibility. There is a question of divisibility. I don't believe the Court has to reach the question of divisibility in this case because at least for two of the three prior convictions for Mr. Jennings, the government introduced all of the underlying documents in the district court, and those documents show for two of those convictions in the indictment, it simply says did shoot, wound, or cause bodily injury. And the government's view is that those documents, even if you were pursuing the modified categorical approach, as the district court found, tracked the statutory language and didn't indicate which of the versions of the statute. The third conviction did simply say strike and wound, but in order to get to the three, I think you have to get to the categorical approach ultimately. Thank you. Unless there are any further questions. Thank you. Thank you, Your Honor. Ms. Finch, you have some time reserved. Thank you, Your Honor. I just have a few comments in response to Ms. Hudson's well-argued response. Malicious wounding and unlawful wounding may be the archetypal offenses that fit what Congress intended, but it does not fit what Congress said, and we can't look at intent if it is in conflict with the plain language of the statute. And the plain language of the statute is that physical force must be an element of the crime, not it must have happened, not it must be presumed to have happened, not even it couldn't have happened without it. If it's not an element, then it does not fall within the ACCA. And in regards to the questioning regarding Castleman and precedent, the precedent that applies to the ACCA cases is Johnson, not Castleman. Castleman, by its own terms, is limited to domestic violence cases. Johnson, by its terms, is expressly applying to ACCA use of force. And some of the prior Fourth Circuit opinions... You're talking about the Johnson case that was decided in 2010? Yes, Johnson won. How many Johnsons? You throw around numbers on them and everything. Yes, the 2010 Johnson defining violent physical force. And as for prior Fourth Circuit precedent, it would be inconsistent with Reed and Irby. I'm looking at... What's inconsistent with Irby, Johnson or Castleman? Johnson. Johnson's inconsistent with Irby. Johnson's inconsistent with Irby. And so are the cases holding that assault and battery of a law enforcement officer is not a violent felony under the ACCA, and that domestic assault and battery is not a violent felony under the ACCA. And those are Fourth Circuit precedents that would be inconsistent with saying that Castleman changed everything. I mean, it would say Castleman... Do you agree with Ms. Hudson that under our rule, the way we operate here, one panel can't change the precedent of the Fourth Circuit? I do, but if the Fourth Circuit has ignored prior precedent, if the panel has ignored prior precedent, I think that prior precedent... The prior precedent is what's controlled. ...is what's controlled. So you're saying that Reed and Irby and one other one you threw out. Well, Covington was West Virginia. Pardon? Covington. You said they were wrong because they contravened Castleman. But now you say Castleman doesn't control. Castleman doesn't control. Well, then what do they contravene? They contravene Johnson. Do they contravene any prior decisions of the Fourth Circuit? They do, the ones in which... Have you cataloged those in your papers? Assault and battery against a law enforcement officer. Do you have any cases that they're inconsistent with? Well, Torres-Miguel is inconsistent. What? Torres-Miguel. Torres-Miguel. They're inconsistent with Torres-Miguel? Yes, very much so. All right. So you say Torres-Miguel, then, would be controlling over Reed, Irby, and Covington. Yes, they would. So we can disregard your view. We would disregard at least Reed, Irby, and Covington and go back at least to Torres-Miguel and apply Torres-Miguel, and you say also Supreme Court case in Johnson. Absolutely. Johnson won. Johnson won. All right. You got any others besides Torres-Miguel that you want to throw out there? I think one of them was U.S. v. White, but I could be wrong on the name. White? I could be wrong on the name, but definitely, specifically. If you're right, we need to get this straightened out. Absolutely. I mean, the judges and the lawyers need to have something to go by. Absolutely. And I do think that the law enforcement officer assault and battery and the domestic violence assault and battery case is not fitting as ACCA predicates would also be highly relevant and would be contradictory of Reed. I also wanted to come up with another de minimis example, spitting. And I had this in a civil case over 20 years ago. That is considered de minimis force, but it is an assault and battery. And if you do it while infected, say, with a MRSA respiratory infection that's resistant to treatment with antibiotics and your victim has respiratory problems to begin with and you do it with the intent to get them seriously ill, that would be causing injury with de minimis force and it would constitute unlawful wounding. But why would Congress not have had, I mean, the question, right, going back to Chief Judge Gregory's two cents is, so Congress passes a statute. It's to sort of keep guns especially out of the hands of people who will use them violently. And why wouldn't Congress want to keep guns out of the hands of people who spit at people in order to kill them? It seems pretty serious to me. It probably would. It does not seem like a minor use of force. If you actually can kill someone by spitting at them and you do it, that seems like a real problem. How is that not the use of violent force? Because it stretches the language beyond the parameters of what our understanding of those words mean. Okay. It's the difference between, say, if that door is locked and I have a key and I open it, that's not use of force. If I want to get in there and I don't have a key and I bang it down, that's use of force. Either way, the door was open, but use of force. On the same theory, if I just sort of prick someone very, very slightly with a sharp blade in their artery, it's just the teeniest little bit of force, but I know they're going to bleed out and die, and that's why I'm doing it. You're saying that's not the use of violent force? Because it was just a teeny little prick. I'm saying that Congress needs to change the wording of their statute if they want to encompass these cases. You would agree with my hypothetical. The very slight pricking of the skin in order to make someone bleed out and die would not be covered by the statute. If indeed it was that very slight, I would have to agree. I doubt that most cutting injuries that cause bleeding out would be minimal force, but in your hypothetical, it would be. Okay. Because the thing is that we haven't given sense to all the words. You could have said just force. It says violent force. It's not so much, I think, so much in Judge Harris' example, which she gave us a good one too, because whether it's a tiny, thin prick on an artery doesn't matter. It's violent. The force, it doesn't matter how minimal it is. It's the violence that's the focus. It's very violent to be on someone's jugular and just pierce it like that. The force is not the point. It's the violent intent. And that's the whole question about these cases. We talked about minimal and other things, but is a force violent? And I think that's what's very difficult, and we start going off on the Pembroke's path with concurrences and then following cases, and it's very difficult to unwind on it. But you're right, our Johnson type and Miguel's cases seem to suggest otherwise. But anyway, go ahead. I'll give you the last word if you have something else. Unless, well, I can't wait to have a question. I would just like to note that because Johnson required violent physical force and it discussed de minimis as not being sufficient, Castleman said indirect force is sufficient for a common law misdemeanor battery. It did not address any other issue. Thank you. Thank you. We'll come down to Greek Council and proceed to our next case.
judges: Roger L. Gregory, Robert B. King, Pamela A. Harris